JOHN HANCOCK MUTUAL LIFE INSURANCE CO., Appellee,

v.

AMERFORD INTERNATIONAL CORP., Appellant.

No. 1369, Docket 93–9128.

United States Court of Appeals, Second Circuit.

Argued March 30, 1994.

Decided April 18, 1994.

Rehearing Denied June 14, 1994.

Barbara M. Roth, New York City (Elliot Paskoff, Francis J. Hearn, Jr., and Townley & Updike, on the brief), for appellee.

Robert S. Nayberg, Carle Place, NY (Martin H. Scher, on the brief), for appellant.

Before: TIMBERS, CARDAMONE, and WINTER, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from a summary judgment entered in the Southern District of New York, John F. Keenan, *District Judge,* in favor of John Hancock Mutual Life Insurance Company (Hancock).

Amerford International Corp. (Amerford) contends that the court erred in strictly construing contractual language to award summary judgment to Hancock. On appeal, Amerford requests a remand for entry of an order granting its own cross-motion for summary judgment. It also seeks reversal of the order denying Amerford's motion for leave to amend its answer.

We affirm.

### I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Effective July 1, 1985, Hancock and Amerford entered into a contract called the Planned Funding Agreement (PFA). Under the PFA, Hancock administered Amerford's employee benefits and paid any benefits' claims from a fund set aside for that purpose. In return, Amerford received an insurance

policy that assured that its liability for employee medical benefits would be capped at a predetermined amount each year.

The PFA operated as follows. It specifically established a Claim Liability Limit (CLL), which was a figure representing the maximum amount of Amerford's liability in a given contract month or year. The CLL was calculated by Hancock underwriters who would examine Amerford's workforce and claim history. Hancock then would establish a Monthly Dollar Factor, which was the monthly premium Amerford paid per employee. That figure was established at the beginning of the contract year, in this case July 1, and did not vary throughout that year. Each month, the Monthly Dollar Factor was multiplied by the number of Amerford employees covered by the PFA. The product of that multiplication was the CLL for that month.

Under the terms of the PFA, when the amount paid out in any given month or contract year exceeded the CLL, Hancock reimbursed Amerford the excess amount as "Deficit". Conversely, if the amount of claims paid out in any future month or contract year was less than the CLL, then "Margin" existed and Amerford was obligated, for an additional premium, to pay Hancock out of any Deficit that Hancock already had paid to Amerford, plus expenses to the extent such amounts and expenses exceeded premiums paid. The PFA assured Amerford that Hancock would make all necessary payouts above the CLL and that Amerford would not have to repay Hancock until Margin became available.

Amerford renewed the PFA each year from 1985 through 1990, with each new contract year beginning on July 1. Section 4(i) of the PFA defines a contract year as the period beginning on a Policy Anniversary, here July 1, and ending either (1) on the day before the next scheduled Policy Anniversary (June 30), or (2) on the date that the agreement terminates. The contract year in question began on July 1, 1990; the agreement was terminated on September 30, 1990. According to the terms of the contract, the last contract year ran from July 1, 1990 to September 30, 1990.

On May 25, 1990, Hancock notified Amerford that the new Monthly Dollar Factor for the next contract year, beginning July 1, 1990, would be $363.78. According to the PFA, the contract automatically renewed each July 1st unless either party gave at least thirty-one days written notice of termination prior to that date. The latest date that either party could terminate the contract in 1990 was May 30.

Hancock contends that it tried to meet with an Amerford representative regarding the PFA several times during June 1990. Each time, however, Amerford rebuffed Hancock's efforts, stating that the representative had not had time to consider the new PFA. After receiving no feedback from Amerford, and after reconsidering the numbers, Hancock decided to revise its renewal recommendation and increase the Monthly Dollar Factor to $520.21. Hancock sent notice of this revision to Amerford on June 29, 1990 and July 3, 1990—two days before and three days after the beginning of the contract year.

Amerford did not object at that time. The parties subsequently met and agreed on the terms. On or about July 20, 1990, Hancock sent Amerford a letter detailing the renewal terms, which were agreed to and retroactively implemented effective July 1, 1990. Amerford, however, began researching alternatives and found a new insurance carrier. On September 30, 1990, Amerford terminated the PFA contract with Hancock. At that time, Amerford held Deficit under the terms of the PFA.

Section 9II(b) of the PFA states that at the end of each contract year, Amerford agrees to pay Hancock "an amount equal to the lesser of: (i) the Margin for such Contract Year; or (ii) the total amount of the Deficit, if any, which has not been recovered previously through the payment of additional premiums". After Amerford terminated the contract, Hancock sent Amerford a report in mid-December 1990 requesting the payment of the total amount of outstanding Deficit. Hancock also requested payment of expenses for the contract year less any amounts due Amerford. In arriving at a total, Hancock figured that the Deficit was $318,969 plus

$12,353 for the Administrative Service Charges for the last contract year, less $230,-294 that was credited to Amerford. The final figure that Hancock estimated it was owed by Amerford was $101,028.

Amerford refused to pay that amount. Hancock commenced the instant action. Amerford asserted that the terms of the PFA were ambiguous, that the court should look to extrinsic evidence to clear up the ambiguities, and, as a result, the court should find for Amerford. Amerford also claimed that the rate increase at the last moment was inequitable.

The court concluded otherwise, holding that the language of the PFA was clear and that it would not rewrite the PFA to suit Amerford's requests. The court granted Hancock's motion for summary judgment. It awarded Hancock $101,028 and denied Amerford's cross-motion.

During the pre-trial procedures, the court stated at a conference that all amendments to pleadings must be submitted by April 30, 1992. On August 28, 1992, Amerford moved for leave to amend its answer to assert a counterclaim for $217,941. Amerford explained its request as resulting from the delay and confusion caused by the death of its Human Resource Director who kept files on this matter. The court denied Amerford's motion as well as Amerford's subsequent motion for reconsideration.

Amerford contends that the court erred in strictly construing contractual language to grant Hancock's motion for summary judgment. On appeal, Amerford requests a remand for entry of an order granting its own cross-motion for summary judgment. Amerford also seeks reversal of the court's order denying Amerford's motion for leave to amend its answer.

## II.

■ The court grants a motion for summary judgment pursuant to Fed.R.Civ.P. 56 when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law". We review the grant of summary judgment *de novo. Sayers v. Rochester Telephone*

*Corp.,* 7 F.3d 1091, 1094 (2 Cir.1993). We may not resolve disputed issues of fact; instead, we must determine whether there are genuine issues of fact to be resolved at trial. *Id.* If there are disputed issues of fact, then we must remand for a full trial.

■ In a contract dispute, a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning. *Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2 Cir.1992). Contractual language is unambiguous when it has " 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion' ". *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2 Cir.1989) (quoting *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978)).

### (A) THE CONTRACT TERMS

■ Amerford argues that it does not owe Hancock any amount of money. Amerford apparently believes that Hancock only may apply Deficit to Margin accumulated in future months. In other words, Amerford argues that there should not have been a final accounting when the contract was terminated. In support of this argument, Amerford urges us to look outside the contract to define terms such as CLL, Contract Year, Deficit, and Margin, which Amerford believes are ambiguous.

This argument would have us contradict the language of the contract. Section 9II(b) of the PFA explicitly states that Amerford must pay the lesser amount of the Deficit or Margin and any administrative costs related to that amount at the end of each contract year. Section 4(i) defines contract year as beginning on the Policy Anniversary, July 1, and ending on the date the PFA terminates, September 1, 1990. The contractual definitions of these terms are quite clear. Amerford owes Hancock the outstanding balance of Deficit according to the terms of the contract. There is no ambiguity and thus no reason to look outside the contract. The

court did not err in adhering strictly to the terms of the contract to hold that Amerford owes Hancock the outstanding Deficit.

## (B) EQUITY

■ Amerford also argues that, since Hancock raised its rate at such a late date, it should be precluded in equity from recovering the Deficit. Central to this argument is Amerford's belief that it was the victim of an unconscionable bargain. The court properly rejected this argument.

■ When parties have entered into an unambiguous contract, the court should look to the terms expressed in the contract itself rather than to "extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable". *Metropolitan Life Ins. Co. v. RJR Nabisco*, 906 F.2d 884, 889 (2 Cir.1990). The court was not obligated to bail Amerford out of a contract it entered into willingly just because Amerford is now unhappy with that contract. *New Bank of New England v. Toronto–Dominion Bank*, 768 F.Supp. 1017, 1022 (S.D.N.Y.1991) ("Nor should the court read an ambiguity into an agreement merely because one of the parties becomes dissatisfied with its position under the plain terms of the agreement."). Amerford and Hancock are sophisticated parties that entered into the contract willingly. Amerford took no immediate action to remedy its position in the contract when Hancock revised the agreement in June 1990. Indeed, the final PFA was not signed until mid-July and the record does not indicate that Amerford voiced its concerns at that time.

Moreover, the court's action was consistent with principles of equity. The PFA clearly states that there is a final reckoning of accounts at the end of the contract year. If the court were to grant Amerford's request and relieve it of its contractual obligation to come to a full accounting, the outcome would be inequitable for Hancock. Instead, the court acted correctly in strictly construing the plain language of the contract to obligate Amerford to pay Hancock $101,028.

## (C) MOTION FOR LEAVE TO AMEND

■ Finally, Amerford asserts that the court abused its discretion in not allowing it to amend its answer to plead a counterclaim after the court-imposed deadline. At a conference with the two parties, the court set an April 30, 1992 deadline for amendments to pleadings. On August 28, 1992, Amerford asked the court for leave to amend its answer to plead a counterclaim for $217,941. Amerford claimed that the delay was a result of the February 1992 death of its Human Resource Director who kept the files on this matter. The court denied Amerford's request, stating that it had directed explicitly that any amendments were to be made on or before April 30, 1992. The court also denied Amerford's motion for reconsideration of the order.

■ Fed.R.Civ.P. 15(a) states that leave to amend a complaint "shall be freely given when justice so requires". Although the rule requires that leave should be granted freely, it is within the sound discretion of the court whether to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Undue delay and futility of the amendment, among other factors, are reasons to deny leave. *Id.* In this case, the court stated that it rejected Amerford's motion for leave because of its delay. Amerford was more than four months late with its amendment. The parties had discussed this aspect of the claim prior to the court's deadline for amendments. Furthermore, Amerford's claim appears to be futile as well. The amount of its counterclaim was the amount that Hancock acknowledged owing Amerford. That amount was deducted in the final balancing both by Hancock and by the court in order to reach the final judgment amount of $101,028.

We hold that the court did not abuse its discretion in denying Amerford's motion for leave to amend.

### III.

To summarize:

The court properly held that the language of the PFA clearly obligated Amerford to pay Hancock the final outstanding balance of $101,028. The court did not abuse its discre-

tion in denying Amerford's motion for leave to amend its answer.

Affirmed.