108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Edsel SMITH, Jr., Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION; New United Motor Manufacturing,
Inc., Defendant-Appellees.
 No. 96-7794.
 United States Court of Appeals, Second Circuit.
 March 21, 1997.
 
 ALAN R. SIRLIN, Brooklyn, NY.
 HERBERT RUBIN, Herzfeld & Rubin, P.C. (David B. Hamm, Miriam Skolnik, on the brief), New York, NY.
 Before JACOBS, LEVAL, CABRANES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York, and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.
 
 
 3
 Following an automobile accident in which he suffered serious injury, Edsel Smith sued the manufacturers of the car, General Motors Corporation ("GM") and New United Motor Manufacturing, Inc. ("NUMMI") under a strict product liability theory of design defect. Following a jury trial in the district court for the Eastern District of New York (Sifton, Ch. J.), in which Smith argued that the car was uncrashworthy, judgment was entered in favor of GM and NUMMI, indicating a finding by the jury that the vehicle was not defective.
 
 
 4
 On appeal, Smith argues that the district court 1) should have permitted him to amend his complaint; 2) erroneously failed to admit a Volvo door into evidence; 3) erroneously charged the jury as to product defect rather than design defect; and 4) used a verdict form containing a fundamental error.
 
 I.Background
 
 5
 On September 15, 1989, Edsel Smith, Jr., an employee of Dollar Rent-A-Car, was driving a 1990 Geo Prizm from Newark Airport to New York City when another car cut him off. Smith lost control of the car and struck a steel pole. The car wrapped itself around the pole at the firewall. Smith survived the accident, but sustained severe injuries to his right ankle and the left side of his body.
 
 
 6
 In 1992, Smith commenced a state action against GM and NUMMI, inter alia. Among other allegations, the complaint alleged that the automobile "was structurally unstable to endure an impact [of this sort]", and "had insufficient safety devices." The case was removed to the Eastern District of New York.
 
 
 7
 Following discovery, both sides signed a stipulation on August 11, 1993, which specified the issues for trial. The stipulation was entered by the court on September 15, 1993. The stipulation provided in relevant part:
 
 
 8
 [T]he sole liability issue to be determined at trial relates to an allegation of design defect concerning the crashworthiness of the 1990 Geo Prizm automobile which is the subject of the complaint; ... all prior allegations, including allegations of manufacturing and/or design defect concerning the tires, rims, steering components, speedometer, safety devices and seat belts are hereby withdrawn with prejudice.
 
 
 9
 (emphasis added).
 
 
 10
 The trial was originally set for July 1994, but was adjourned repeatedly. Two weeks before trial was to begin, Smith filed a motion, returnable on the first day of trial, to amend the complaint to assert a claim that the vehicle at issue was defective because, inter alia, "it lacked front and or sideways airbags." Smith asked that the district court permit the amendment so that the Court might examine the question of federal statutory preemption of airbag claims. To explain the delay in making the motion, Smith argued that the United States Supreme Court's denial of certiorari in Tebbetts v. Ford Motor Co., 665 A.2d 345 (1995), cert. denied, 116 S.Ct. 773 (1996), constituted a "reversal" of the Supreme Court's prior holding that airbag claims were preempted by federal law. On March 18, 1996, the district court denied Smith's motion,
 
 
 11
 since it appears to me in this case there is undue delay in making the motion and the result of an amendment would be simply to delay an already old case even further to permit both sides to, particularly the defendants, to do the additional pretrial preparation which would be necessary to get the case in a posture to try this new issue.
 
 
 12
 I am not persuaded on the particular circumstances of this case as presented on the papers or on the basis of any uncertainty in the law on the subject there is or was an adequate excuse for failing to make this motion earlier.
 
 
 13
 In the course of the four-day trial, Smith attempted to introduce into evidence a Volvo door. The district court refused to admit it into evidence, because it had not been marked as an exhibit during the pre-trial marking conference, and because Smith intended to use it as more than demonstrative evidence.
 
 
 14
 At the charge conference, the district judge did not read the charge verbatim, but the charge later given was virtually identical to what the judge stated at the conference would be said. Smith objected to neither the proposed charge nor the charge as given.
 
 
 15
 The verdict form included a series of interrogatories. The directions indicated that, if the jury answered "no" to interrogatory number one, "Was the defendant's product defective?", then the jury was to proceed no further. Before the verdict form was given to the jury, the district court gave both parties the opportunity to examine and object to the form. Smith's sole objection was to interrogatory number five: "Could the plaintiff, by use of reasonable care, have avoided his injury?" The jury returned a verdict that the product was not defective, answering "no" to interrogatory number one.
 
 
 16
 Smith moved for a new trial on the grounds that 1) the district court should have allowed Smith to raise as issues at trial the absence of airbags and adequate padding; 2) interrogatory number one was "incorrect and improper," because it specified product defect rather than design defect; and 3) the district court should have allowed the Volvo door to be admitted at trial, because it was probative evidence of alternative design, one of the elements of a crashworthiness claim. The district court denied the motion in its entirety, and entered final judgment.
 
 II.Discussion
 A.Denial of the Motion to Amend
 
 17
 We review a district court's denial of a motion to amend a complaint for abuse of discretion. John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir.1994). The district court has discretion "to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990).
 
 
 18
 There was no abuse of discretion here. Smith waited over three years after the stipulation was entered, until the eve of trial, to move to amend his complaint. This was an inordinate delay, as the district court found, particularly because Smith's only explanation for the delay was that the Supreme Court had denied certiorari in an airbag preemption case. That event could not satisfactorily account for the delay, because denial of certiorari has no precedential weight whatsoever, and marks no change in the law. See Teague v. Lane, 489 U.S. 288, 296 (1989). Finally, Smith's attempt to amend the complaint immediately before the trial would have prejudiced GM and NUMMI substantially, requiring more preparation and discovery on a case that had already been delayed for more than two years.
 
 
 19
 Moreover, Smith's airbag claims were precluded by the stipulation, which indicated Smith's withdrawal with prejudice of "all prior allegations, including allegations of ... design defect concerning ... safety devices." This withdrawal precluded trial of the issues Smith was seeking to plead.
 
 
 20
 B.Failure to Admit the Volvo Door into Evidence
 
 
 21
 We do not reverse a decision to exclude evidence in the absence of an "abuse of discretion amounting to manifest error." Sage Realty Corp. v. Insurance Co. of North America, 34 F.3d 124, 128 (2d Cir.1994). Smith had not offered the Volvo door to be marked during the pre-trial marking conference, and tried to offer it into evidence without warning in the middle of the trial. Pretrial conferences exist to avoid such surprises; the district court's denial of the motion to enter the door into evidence was not an abuse of discretion.
 
 
 22
 We also agree with the district court that the door was not intended as demonstrative evidence. Smith's counsel stated at trial: "[The Volvo door] existed at exactly the same time as did this Geo door and the comparison of the two doors shows to the jury clearly there was an alternative safer design." The district court properly found based on this statement that the door was more than simply a demonstrative exhibit.
 
 C.The Jury Charge and Verdict Form
 
 23
 Smith did not timely object to the jury charge or interrogatory number one. He has therefore waived these arguments as a ground for reversal. See Lane v. General Motors Corp., 520 F.2d 528, 529 (2d Cir.1975) (per curiam ); Cohen v. Franchard Corp., 478 F.2d 115, 122 (2d Cir.1973). Smith would still be entitled to a reversal, however, if the charge or the interrogatory contained a fundamental error, the correction of which is necessary to prevent a miscarriage of justice. Cohen, 478 F.2d at 124. No such error is present here.
 
 
 24
 The structure of the verdict sheet is a matter within the discretion of the district court. Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir1988). Smith argues that the charge of "defective product" rather than "design defect" was incorrect. However, it is unclear how the two concepts differ for purposes of this claim, and Smith has shed no light on the question. If anything, "defective product" is a more inclusive term than Smith now seeks. In any event, the interrogatory contained no fundamental error. It and the jury charge fully and correctly instructed the jury as to the design defect theory. Smith seems to believe that "defective product" and "manufacturing defect" are synonymous. We decline to adopt this view.
 
 
 25
 We have examined all of Smith's contentions, and find them to be without merit. The judgment of the district court is therefore AFFIRMED.