# In re WORLDCOM, INC. SECURITIES LITIGATION

## In re Painewebber Goals Securities Litigation

Nos. 02 Civ.3288 (DLC), 03 Civ.1052.

United States District Court, S.D. New York.

Jan. 6, 2004.

Arthur N. Abbey, Jill S. Abrams, Richard B. Margolies, Abbey Gardy, LLP, New York City, for Lead Plaintiffs.

Gregory A. Markel, Ronit Setton, Cadwalader, Wickersham & Taft LLP, New York City, for Defendant UBS AG.

## OPINION & ORDER

COTE, District Judge.

This Document Relates to:

This Opinion addresses a motion to dismiss claims brought in one of the many actions arising from the collapse of WorldCom, Inc. ("WorldCom"). On June 25, 2002, WorldCom made the first of several announcements that it would restate publicly filed financial reports; since then, WorldCom has admitted that its financial reports filed with the SEC from 1999 through the first quarter of 2002 were overstated by approximately $9 billion. A host of lawsuits have been filed alleging claims in connection with WorldCom's collapse, and have been assigned to this Court by the Judicial Panel on Multi–District Litigation ("MDL Panel").

Defendant UBS AG ("UBS") has moved to dismiss the Consolidated Amended Class Action Complaint ("Complaint") filed on behalf of purchasers of 12% GOALs(+) securities issued by UBS (the "GOALs"). The GOALs are notes that referred to the performance of the stock of WorldCom, and this lawsuit has been consolidated with the securities litigation arising from the collapse of WorldCom (the *Securities Litigation*).

This motion raises the issue of whether the accurate description of historical prices for a company's stock can support a claim for a violation of Section 11 of the Securities Act of 1933, when those prices were artificially inflated through another party's fraud. Finding that an accurate description of stock prices cannot support such a claim, the motion to dismiss brought by UBS is granted.

*Background*

The initial class action complaint in the GOALs litigation, *Tuttelman v. Ebbers*, 03 Civ. 1052, was filed on February 14, 2003, against former WorldCom officers and directors. It pleaded violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with the GOALs.

The GOALs are notes issued by UBS that paid an annual interest rate of 12% over two years, payable semi-annually. The GOALs matured on January 24, 2003. The amount of the investor's principal to be repaid at maturity depended on the performance of WorldCom common stock during the term of the notes. In brief, if the price of WorldCom common stock rose, investors would be repaid their full principal in cash at maturity; if it fell below certain trigger points, they would be repaid their principal in a pre-set number of WorldCom shares. The GOALs were listed on the American Stock Exchange and traded in the secondary market.

On March 18, a second class action, *Sky v. Ebbers*, 03 Civ. 1897, was filed in connection with the GOALs. The *Sky* complaint named former officers and directors of WorldCom and included UBS as a defendant, alleging that UBS had violated Section 11 of the Securities Act of 1933 ("Securities Act"). An Order of August 8 consolidated the two actions as the *In re PaineWebber GOALs Securities Litigation* (*"GOALs Litigation"*) and consolidated the the *GOALs Litigation* with the *Securities Litigation* for pretrial purposes.

On August 22, the Complaint for the *GOALs Litigation* was served. The Complaint names former officers and directors of WorldCom and Worldcom's former outside auditor, Arthur Andersen LLP, as defendants, and alleges that they violated the Exchange Act. It also names UBS as a defendant. The Complaint alleges that UBS violated Section 11 of the Securities Act based on the recitation of the historical prices for WorldCom's common stock contained in the Prospectus Supplement of January 17, 2002. The chief allegations in the Complaint relevant to UBS and to this motion to dismiss include the following.

UBS issued $19.5 million of GOALs pursuant to a Registration Statement and Prospectus dated May 17, 2001, and a Prospectus Supplement of January 17, 2002 (collectively "Prospectus"). UBS received the balance of the proceeds from the offering after an underwriting discount was subtracted. The class period was defined as beginning on January 17, 2002, the date of the Prospectus Supplement for the GOALs, through and including June 25, 2002, the date on which WorldCom first announced that it would undertake a massive restatement of its financial statements.

The Prospectus Supplement, which is incorporated by reference in the Complaint, listed historical stock price information for WorldCom, including its common stock closing prices for each quarter for the years 1998 through 2001, and as of January 17, 2002, under the heading "Historical Performance of WorldCom Shares." It advised that it had obtained the trading price information "from Bloomberg L.P., without independent verification," and warned that "YOU SHOULD NOT TAKE THE HISTORICAL PRICES OF

WORLDCOM SHARES AS AN INDICATION OF FUTURE PERFORMANCE."

The Complaint alleges that

The trading prices of WorldCom's stock listed in the Prospectus Supplement were artificially inflated as a result of the wrongdoing of the non-UBS defendants, and were therefore materially false and misleading.... The value of the GOALs(+), which was based on WorldCom's common stock prices, declined substantially during the Class Period as a result of UBS's violations of the securities laws.

The Prospectus Supplement also informed investors that UBS did not "know whether WorldCom, Inc. has disclosed all events occurring before the date of this prospectus supplement—including events that would affect the accuracy or completeness of" WorldCom's public filings, or "the market price of WorldCom Shares, and therefore, the exchange rate the calculation agent uses to determine the number of WorldCom shares you will receive...." It advised that investors "SHOULD UNDERTAKE SUCH INDEPENDENT INVESTIGATION OF WORLDCOM, INC. AS IN YOUR JUDGMENT IS APPROPRIATE TO MAKE AN INFORMED DECISION WITH RESPECT TO AN INVESTMENT IN GOALS(+)." It gave directions on how to locate WorldCom's public filings. It represented that it had "not participated in the preparation of any" of WorldCom's public filings or made any " 'due diligence' investigation or any inquiry of WorldCom, Inc. in connection with the offering of GOALs," and did "not make any representation that the publicly available documents or any other publicly available information about WorldCom, Inc. are accurate or complete."

*Discussion*

■ The Federal Rules of Civil Procedure require complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. Pleadings are to give "fair notice" of a claim in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To dismiss an action pursuant to Rule 12(b)(6), a court must determine that "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992 (citation omitted).

■ Although the court's focus should be on the pleadings, it may also consider

any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.

*Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (citations omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991). The court need not credit general conclusory allegations that "are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995).

Section 11 of the Securities Act provides that any signer, director of the issuer, preparing or certifying accountant, or underwriter may be liable if "*any part of the registration statement,* when such part became effective, *contained an untrue statement of a material fact or omitted to state a material fact* required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a) (emphasis supplied).[1] "The section was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

"[A]ny person acquiring a security issued pursuant to a materially false registration statement" has a cause of action under Section 11 "unless the purchaser knew about the false statement at the time of acquisition." *DeMaria v. Andersen,* 318 F.3d 170, 175 (2d Cir.2003) (citation omitted). Purchasers have standing to sue whether they purchased at the time of the initial public offering or in the secondary market. Those who purchased within twelve months after the issuance of the registration statement need not prove reliance in order to recover. *Id.* at 176; 15 U.S.C. § 77k(a).

Allegations that "material facts have been omitted" from a registration statement or "presented in such a way as to obscure or distort their significance" are sufficient to state a claim for violation of Section 11. *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir.1991) (citation omitted). Material facts may "include not only information disclosing the earnings and distributions of a company but also those facts which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities." *Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726, 732 (2d Cir.1987) (citation omitted). The "central inquiry" in determining whether a statement is misleading under Section 11 is "whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the investment." *I. Meyer Pincus,* 936 F.2d at 761 (citation omitted); *see also DeMaria,* 318 F.3d at 180.

■ The plaintiffs contend that the false and misleading statements made by UBS were the historical WorldCom common stock prices for the period 1998 through early 2002 listed in the Prospectus Supple-

---

1. Section 11 states in pertinent part:
 [i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may sue—
 (1) every person who signed the registration statement;

 (2) every person who was a director of ... the issuer ...
 (4) every accountant ... who has with his consent been named as having prepared or certified any part of the registration statement ...
 (5) every underwriter with respect to such security.
 15 U.S.C. § 77k.

ment.[2] Since Section 11 is a strict liability statute, and since the stock prices were artificially inflated by fraud and therefore materially false and misleading, they argue that the reporting of WorldCom's stock prices was also false and misleading as a misrepresentation of the true value of WorldCom stock.

The plaintiffs have not stated a Section 11 claim against UBS. They do not allege that the stock prices listed in the Prospectus Supplement were not correctly reported. They do not point to any other statement by UBS in which UBS makes any representation about WorldCom, the reliability of its financial statements, the accuracy of its public statements, or the utility of the historical stock prices as a predictor of future stock performance. To the contrary, the Prospectus Supplement specifically disclaims that it is making any representations in this regard.

Although the pleading requirements for a Section 11 claim are minimal, Section 11 does require that a plaintiff identify an "untrue statement of a material fact" or allege that the registration statement "omitted to state a material fact." 15 U.S.C. § 77k. "Not every bad investment is the product of misrepresentation." *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir.1996). The plaintiffs have failed to allege that the historical stock prices were falsely described. Their allegation that the stock prices were artificially inflated by the WorldCom fraud does not cure this pleading deficiency. They have identified no statement (or omission) by UBS that related to the reliability of the stock prices as an indicator of WorldCom's financial health in either the past or the future. *See DeMaria*, 318 F.3d at 181 (affirming dismissal of Section 11 claims

because any erroneous information in the prospectus "would not have misled the average investor in light of the accurate information in the prospectus."); *Olkey*, 98 F.3d at 6 (affirming dismissal of securities fraud suit, including Section 11 claims, where prospectus outlined the risks entailed in investing in mortgage-backed securities); *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 401 n. 3 (6th Cir.1997) ("It is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data.") (citation omitted).

 The plaintiffs have asked for leave to amend. Under Rule 15, Fed. R.Civ.P., leave to amend shall be "freely given when justice so requires," Fed. R.Civ.P. 15(a), and whether to grant leave to amend is within the discretion of the district court. *See John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994). Generally, a party will be allowed "to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir.2002) (citation omitted). It is appropriate to deny leave to amend if the proposed amendment is futile. *Id.; see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). An amendment may be futile if, for example, it would not survive a motion to dismiss brought pursuant to Rule 12(b)(6), *see Lucente*, 310 F.3d at 258, or if the claims the plaintiff seeks to add would be barred by the applicable statute of limitations, *see*

---

**2.** The parties have not addressed whether the Prospectus Supplement is a registration statement for purposes of Section 11. Section 11 addresses statements and omissions in "registration statements."

*Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000).

The plaintiffs have not included any proposed amended pleading or indicated what they might allege to cure the deficiency identified in the motion to dismiss. The plaintiffs have already been permitted to file one amended pleading through the filing of this Consolidated Amended Class Action Complaint. In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile.

### Conclusion

For the reasons stated above, the motion brought by UBS to dismiss the claims against it in the *GOALs Litigation* is granted.

SO ORDERED.