In re QUALITY GUTTER SUPPLY CORP., Debtor.

Robert J. Musso, Trustee of the Estate of Quality Gutter Supply Corp., Plaintiff,

v.

Charles Willie and Emanuel Logothetis, Defendants.

Bankruptcy No. 01–11814(dem).

Adversary No. 1–02–1330–dem.

United States Bankruptcy Court, E.D. New York.

Sept. 25, 2006.

Gilberto M. Garcia, Esq., Garcia & Kricko, North Bergen, NJ, for Movant Peter Logothetis.

Bruce Weiner, Esq., Rosenberg, Musso & Weiner, Brooklyn, NY, for the Chapter 7 Trustee.

## DECISION AND ORDER ON APPLICATION TO REOPEN ADVERSARY PROCEEDING AND ENFORCE SETTLEMENT

DENNIS E. MILTON, Bankruptcy Judge.

The matter is before the Court on the application of Peter Logothetis ("P.Logothetis") for an Order reopening the above adversary proceeding and thereafter enforcing a stipulation of settlement. Specifically, P. Logothetis seeks an Order directing Robert J. Musso ("Musso"), the Chapter 7 trustee (the "trustee") to pay the New York State Department of Taxa-

tion and Finance the full amount of its claim for unpaid sales taxes against the debtor Quality Gutter Supply Corp. ("Quality Gutter"), and thereafter directing the trustee to reimburse P. Logothetis for payment of a portion of said sales tax payments which the New York State Department of Taxation and Finance had obtained through a levy from his personal account. For the reasons set forth below, this application is denied in all respects.

On February 16, 2001, Quality Gutter (the "debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code ("Code"). On April 18, 2001, the debtor's case was converted to one under Chapter 7 of the Code, and Musso became the trustee of the debtor's estate. On March 22, 2001, the New York State Department of Taxation and Finance Tax Compliance Division ("Department of Taxation"), filed a proof of claim, labeled as claim # 13, for a sum of $380,181.58.

Quality Gutter was a manufacturer and supplier of aluminum rain gutter products. Emanuel Logothetis ("E.Logothetis") and Charles Willie ("C.Willie") started this business. P. Logothetis and Richard Willie ("R.Willie"), their sons, continued its operations after their fathers retired. On November 16, 1998, Elmar Holdings Corporation, whose two equal shareholders were Norman S. Hollander and David Fusiler, entered into a contract to purchase E. Logothetis' and C. Willey's interest in Quality Gutter for the sum of $1,289,000.00. On or about January 12, 1999, this transaction closed. At the closing, Quality Gutter paid E. Logothetis $376.950.00 and gave him a promissory note for $250,000. After the closing, Quality Gutter paid E. Logothetis approximately $87,000 on account of this note.

On May 14, 2002, the trustee commenced this adversary proceeding against E. Logothetis and C. Willie alleging that the funds paid to them at or after the closing were avoidable fraudulent conveyances under New Jersey law. On February 14, 2003, the trustee filed a complaint against P. Logothetis [1] to recover some or all of the funds that E. Logothetis transferred to him.

On October 7, 2003, the trustee and E. Logothetis and P. Logothetis reached a settlement, which was memorialized in a stipulation (the "Stipulation"). The Stipulation provided that

E. Logothetis and P. Logothetis shall pay to the [t]rustee $100,000 (the "Settlement Amount") in full settlement of all claims of the [t]rustee against E. Logothetis and P. Logothetis.... E. Logothetis and P. Logothetis agree to the substitution of the [t]rustee as plaintiff in the matter entitled Logothetis et. al. v. Comprehensive Services et. al., currently pending in the Superior Court of the State of New Jersey, which action seeks damages for professional malpractice by the [d]ebtor's former accountant.[2] E. Logothetis and P. Logothetis

---

1. Robert J. Musso, Trustee of the Estate of Quality Gutter Supply Corp., v. Peter Logothetis and Emmanuel Logothetis, Docket No.: 1–03–1063–dem

2. P. Logothetis claimed that the advice he received from William Hark, Quality Gutter's accountant, not to register the debtor with the Department of Taxation caused him to be personally liable to the Department of Taxation in the amount of $102,000 plus accrued interest. This sum equals the amount of sales tax the debtor owed due to its sales in the State of New York:

At the time of the sale of the shares of Quality Gutter, there was an outstanding debt to the New York Department of Taxation for failure of the Debtor to register to collect sales tax. It was unknown to me that I had to register Debtor to collect sales tax in the State of New York. Debtor's accountant, William Hark, had advised on several occasions that Debtor did not have

agree that any damages recovered in that action shall be property of the [d]ebtor's estate.

Stipulation dated October 7, 2003 at 3 ¶¶ 1,3.

On November 21, 2003, this Court approved the Stipulation. On January 23, 2004, the Court closed this adversary proceeding. On January 22, 2004, the trustee filed an application for approval of the settlement of the malpractice action for a sum of $220,000.00. No motions in opposition were filed. On March 11, 2004, the Court entered an order approving the settlement.

In April 2005, the trustee filed his final report and the applications for compensation of the professionals. In the final report the trustee provided a summary of the distribution of the funds of the debtor's estate. The trustee represented that the proceeds of the estate totaled $874,880.47 to be distributed as follows: (1) $568,545.64 to the chapter 7 administrative expenses, (2) $13,282.95 to the chapter 11 administrative expenses and (3) $293,051.88 to the priority claimants pursuant to Section 507(a)(3)-(6) of the Code. According to the final report, priority tax claimants would not receive any monies in payment of their claims. Notice of the report was sent to all parties, including P. Logothetis. At no time did any party file an objection to the final report or to the applications for compensation of the professionals. On May 24, 2005, the Court approved the final report and the applications for compensation in full. On July 26, 2005, the main bankruptcy case was closed.

On May 12, 2006, P. Logothetis filed the instant application to reopen this adversary proceeding and enforce the Stipulation (the "Application"). In the Application, P. Logothetis argued that the trustee had failed to comply with the Stipulation which required the trustee to pay the claim of the Department of Taxation. He stated that after he had commenced the malpractice action the trustee requested to be substituted as the real party in interest. P. Logothetis claimed that "Mr. Musso's theory for substituting [himself] as plaintiff in the malpractice case was that the claim made by [P. Logothetis] was actually property of the estate ... since Debtor ha[d] to pay the debt." Certification of P. Logothetis at 6. Based on this understanding, P. Logothetis "believe[d] that [he] would not incur any further liability since the trustee had taken over the responsibilities of paying the debt ... and thus, the collection efforts against [him] as a former officer of the corporation would cease." *Id.*

On May 25, 2006, the trustee filed a Response in Opposition to the Application. On June 8, 2006, the Court conducted a hearing on the Application and instructed counsel for P. Logothetis to file additional papers, if any, on or before June 29, 2006 and counsel for the trustee to file a response, if any, on or before July 20, 2006.

to register with the New York Department of Taxation.

After Debtor's shares were sold, I, as former officer of the corporation, received the results of an audit performed by the New York Department of Taxation. It advised me [sic] that I was personally responsible under the law for the payment of $102,000.00 principal balance plus accrued interest for Debtor's failure to pay and to register with the Department for collection of sales tax in its sales in the State of New York.

I filed suit against William Hark in Superior Court of New Jersey seeking reimbursement of all charges made by the Department of Taxation under the theory of professional negligence.

Certification of P. Logothetis in Support of Motion to Enforce Settlement ("Certification of P. Logothetis") at 3–4.

Neither party filed additional papers. The Court then took the matter under advisement and reserved decision.

 The Application must be denied. The Stipulation was clear and unambiguous on its face. It provided that E. Logothetis and P. Logothetis would pay to the trustee $100,000 and that the trustee would be substituted as plaintiff in the malpractice action against the debtor's former accountant. The Stipulation neither required the trustee to take any action with respect to the Department of Taxation's claim nor provided for the payment of any tax claims.

■ The Court's obligation is to effectuate the intent of the parties as expressed in the chosen contractual language. *See John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994); *Abiele Contracting v. N.Y. City Sch. Constr. Auth.*, 689 N.E.2d 864, 867–68 (N.Y.1997). Since the terms of the Stipulation are clear and unambiguous, the Court will not look beyond the four corners of the Stipulation. Here, the trustee adequately complied with its duties under the Stipulation and collected the proceeds of the malpractice action and distributed them according to the priority scheme outlined in the Code.

The fact that P. Logothetis now claims, two years later, that the end result, the Stipulation, is not what he bargained for cannot serve as a basis for the relief which he now seeks. "The Stipulation ... was the product of arms-length negotiations between the [t]rustee and experienced and competent counsel [for P. Logothetis] and [wa]s not the product of fraud or collusion." Certification of P. Logothetis at 12. Furthermore, P. Logothetis had an opportunity to object to the Stipulation, the settlement of the malpractice action, the final report and the applications for allowance of the professionals, but chose not to exer-

cise this right. Under these circumstances, the Court finds that P. Logothetis has failed to establish circumstances warranting re-opening this case. Accordingly, the Application is denied in all respects.

IT IS SO ORDERED.