Dave **ALEXANDRE**, Anthony Gibbons, John Gillim, Keith Hazel, Philippe Lavelanet, Andre Mack, and Kevin Nalty, Plaintiffs,

v.

**TOWN OF HEMPSTEAD**, Department Of Sanitation, Sanitary District No. 2, Board of Commissioners in their official and individual capacity, including but not limited to: Dennis J. Meekins, Brian F. O'Connor, Gerard W. Brown, John A. Cools, Leroy W. Roberts, Robert A. Noble and Michael McDermott, Defendants.

No. 09–cv–1269 (ADS)(WDW).

United States District Court, E.D. New York.

June 4, 2011.

Brendan Chao, Esq., Great Neck, NY, Attorney for the plaintiffs.

Law Offices of Gregory S. Lisi, P.C., by Gregory S. Lisi, Esq., of Counsel, Rockville Center, NY, Attorneys for the defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs in this case are all current or former employees of the defendants Town of Hempstead Department of Sanitation and Sanitation District No. 2. The plaintiffs allege that the defendants discriminated against them on the basis of race, and otherwise violated their civil rights. The plaintiffs now move to amend their complaint to allege certain additional facts related to this alleged discrimination. For the reasons that follow, the Court grants the plaintiffs' motion.

## I. BACKGROUND

The following facts are drawn from the plaintiffs' proposed amended complaint. For purposes of this motion to amend, the Court accepts these facts as true and treats them in the best light for the plaintiffs.

On April 19, 2007, the plaintiffs Dave Alexandre, Anthony Gibbons, John Gillim, Keith Hazel, Phillippe Lavelanet, Andre Mack, and Kevin Nalty, all of whom are African–American, were serving as seasonal sanitation workers for the Town of Hempstead Sanitary District No. 2 (the "Sanitary District") and the Town of Hempstead Department of Sanitation. On that date, at some point the plaintiff John Gillim entered the Sanitary District garage, and saw a hangman's noose hanging from the wall. Several of Gillim's Caucasian co-workers were sitting in the vicinity of the noose. Gillim questioned the Caucasian employees about the noose, but received no response. Gillim then removed the noose from the wall and threw it in the back of a garbage truck. Shortly thereafter, three other plaintiffs, Keith Hazel, Anthony Gibbons, and Phillippe Lavelanet, saw the same noose returned to the place from where Gillim had taken it down, again with a number of Caucasian employees sitting nearby. A Caucasian employee named John Beyer was later determined to have hung the noose, but he was not reprimanded.

All of the plaintiffs—those that saw the noose and those that did not—were offended by the hanging of the noose. The plaintiffs were also offended by the comments of the defendant Michael McDermott, one the commissioners of the Sanitary District, who remarked in response to being informed of the noose that, "[t]en years ago we would have been able to laugh at things like this." (Am. Compl., ¶ 39.)

According to the plaintiffs, the appearance of the noose on April 19, 2007 was not an isolated event, but rather was a particularly egregious example of the pervasive and condoned racism within the Sanitary District. Other examples of this racism included:

- a Caucasian co-worker who referred to the plaintiffs Gillim, Lavelanet, and Gibbons as "My Nigga," (*Id.*, ¶ 43);

- an incident in which a Caucasian employee told the plaintiff Gillim, "Hurry up, Nigger. You are working slow," (Id., ¶ 44);

- a Caucasian employee who told an African–American co-worker, "You niggas are working slow," (Id., ¶ 45);

- an incident in which a supervisor named Keith Eckles told an African–American employee "Working off the back of the truck is a black man's job. They can swing off the back of the truck like monkeys," (Id., ¶ 46); and

- a Caucasian employee who said that "Black people are the only people that should be on the back of the truck. White people should either be driving the truck or working in the office." (Id., ¶ 71.)

The plaintiffs also allege that they were discouraged from making complaints about their working conditions, and that African–American employees who did complain were

terminated. In addition, the plaintiffs maintain that African–American employees were denied promotions based on race, and that they were regularly re-classified from "part-time" to "seasonal" workers, because this permitted the defendants to pay the African–American workers a lower wage.

On March 26, 2009, the plaintiffs commenced the present suit against the Town of Hempstead, the Town of Hempstead Department of Sanitation, Sanitary District No. 2, and Sanitary District No. 2's Board of Commissioners, including Dennis J. Meekins, Brian F. O'Connor, Gerard W. Brown, John A. Cools, Leroy W. Roberts, Robert A. Noble, and Michael McDermott. The plaintiffs asserted causes of action for (1) employment discrimination, pursuant to Title VII, 42 U.S.C. § 2000e; (2) employment discrimination, pursuant to 42 U.S.C. § 1981; (3) violations of the plaintiffs' First and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983; (4) Section 1983 *Monell* liability as to the municipal defendants, for violation of the plaintiffs' federal statutory and constitutional rights; and (5) employment discrimination in violation of the New York State Human Rights Law, New York State Executive Law § 296. As of September 15, 2010, the parties had completed all discovery, with the exception of three depositions that the defendants were later given permission to take. No party has moved for summary judgment, and no trial date has been set.

On October 7, 2010, the plaintiffs moved before United States Magistrate Judge William D. Wall to amend their complaint to assert additional facts. On October 27, 2010, Judge Wall denied that motion without prejudice, and directed the plaintiffs to move to amend before this Court. On December 1, 2010, the plaintiffs then filed the present motion to amend pursuant to Fed.R.Civ.P. 15. In seeking to amend their complaint, the plaintiffs do not assert any new causes of action, but rather seek only to allege additional facts in support of their existing claims. The plaintiffs' primary new allegations concern three events, and are set forth below:

72. In 2009, [sanitation worker Robert] Hachemeister was suspended following his use of the word "Nigger" while driving a sanitation truck.

73. In July 2010, after the filing of the original complaint in this matter, Plaintiff Gillim received an electronic message from Hachemeister, which message stated, in sum and substance, "I need you on my trucka nucka;" the term "nucka" is a euphemism for the word "Nigger."

74. Plaintiff Gillim reported the incident to a supervisor, but to date Plaintiff Gillim has heard nothing more about the incident.

75. Since reporting the incident involving Hachemeister, Hachemeister has attempted to intimidate Plaintiff Gillim, and threatened to fight him.

76. Plaintiff Gillim reported this intimidation to a supervisor, but upon information and belief, no action was taken, and no investigation was conducted.

77. [In 2008,] A Caucasian sanitation driver who was working with two African American helpers complained about a Baldwin Fire Department truck that was being driven by one of the District's Board of Commissioners, Defendant Gerard W. Brown.

78. The Caucasian Fire Department employees yelled out of their truck, when passing the sanitation truck, "Fucking Moolies," referring to the two African American helpers in the back of the truck.

79. The Caucasian driver complained to Defendant McDermott, who allegedly conducted an investigation into the incident.

80. Defendant Noble, when questioned about the incident, stated, "I said I didn't really, you know—it didn't come under my realm of responsibilities so I had very little to do with it and I probably was busy and I didn't really want to hear it."

(Am.Compl., ¶¶ 72–80.)

The defendants oppose the plaintiffs' motion to amend on the grounds that it is untimely; will result in undue delay; and will cause the defendants undue prejudice. The Court notes that the defendants do not assert that the amendment is futile.

In maintaining that the plaintiffs' motion to amend is untimely, the defendants point out that the plaintiffs knew of all of the

newly-asserted facts by at least July 2010, and they knew of the 2008 incident by at least May 2010, if not sooner. According to the defendants, the plaintiffs have waited too long to move to amend. For their part, the plaintiffs do not deny that they had knowledge of all of these events by at least July 2010, and in the case of the 2008 event, even earlier. However, the plaintiffs note that they made timely requests to the defendants asking for their consent to amend the complaint, but that the defendants never responded to these requests. The plaintiffs also point out that the defendants were aware of each of the three alleged incidents at the time each happened or shortly thereafter. The plaintiffs further state that during depositions, their counsel questioned—or attempted to question—a number of witnesses about these alleged incidents.

As for undue prejudice, the defendants maintain that granting the plaintiffs leave to amend their complaint would require that discovery be reopened, and that each of the seven named plaintiffs would need to be redeposed. The defendants assert that this additional discovery, along with the delay in the case that would result from it, would be unfair and expensive. They also imply that the plaintiffs have made the present motion in bad faith. As to this latter assertion, the plaintiffs disagree, and maintain that they have acted in good faith, and that no unfair prejudice to the defendants would result from the amendment.

## II. DISCUSSION

### A. Legal Standard on a Motion to Amend

Fed.R.Civ.P. 15 governs the amendment of pleadings in federal court. In this case, both Rule 15(a) and 15(d) apply to the plaintiffs' proposed amendment. Rule 15(a) addresses the amendment of a pleading to allege facts that pre-date the filing of the complaint, and thus Rule 15(a) applies to the alleged 2008 fire truck incident. Rule 15(d) addresses amendment to allege facts that occurred after filing, and that rule therefore applies to the alleged events involving Robert Hachemeister.

Rule 15(a) states in pertinent part:

Amendments Before Trial.... a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Rule 15(d) states in pertinent part:

Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented....

■ In the Second Circuit, leave to amend is freely granted under both Rules 15(a) and 15(d). Fed.R.Civ.P. 15(a); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995) (applying the "freely granted" standard on a Rule 15(d) motion to amend). Under both rules, this means that, "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion [to amend] should be freely granted." *Id.*, citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (analyzing a Rule 15(a) motion to amend). The decision as to whether to permit an amendment is soundly vested in the discretion of the district court. *See, e.g., Commander Oil Corp. v. Barlo Equipment Corp.*, 215 F.3d 321, 333 (2d Cir.2000) (" 'it is rare for an appellate court to disturb a district court's discretionary decision to allow amendment.' " (quoting *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir.1995))).

■ In determining whether leave to amend should be granted, among the "most important" issues to consider is prejudice to the opposing party. *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir.2010) (internal quotations omitted). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981) (granting leave to amend after discovery was closed, where there was no undue prejudice to the defendants and "no trial date had been set by the

court and no motion for summary judgment had yet been filed by the defendants"); *accord Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993).

## B.  As to the Plaintiffs' Motion to Amend

█ In light of the permissive standard applicable on a motion to amend, the Court finds that it is proper to grant the plaintiffs leave to amend their complaint.

Most importantly, in the Court's view, the defendants have identified no undue prejudice that would result from the proposed amendment. The plaintiffs are adding no additional causes of action, and are alleging only a limited number of additional facts. In addition, only one of the three additional alleged incidents involves any of the named plaintiffs, and that incident involves only the plaintiff John Gillim. In spite of this, the defendants maintain that the plaintiffs' proposed amendment would require them to re-depose all seven of the named plaintiffs. With reasonable certainty, the Court does not find this to be feasible or likely. The proposed alleged events that do not directly involve any of the plaintiffs presumably are relevant to the plaintiffs' *Monell* claim based on municipal liability. Moreover, to the extent that United States Magistrate Judge Wall determines that, given the amendment, reopening depositions is appropriate, the Court finds that this limited additional discovery will not be unreasonable, unfair, or cause substantial delay.

With respect to the defendants' assertion that the proposed amendment would result in "surprising the Defendants with novel incidents after discovery has already been closed," (Opp. at 4), the Court finds this objection also to be without basis. While, perhaps, the plaintiffs could have exercised greater diligence in seeking to amend sooner, the defendants were aware of the alleged incidents, as well as the plaintiff's intention to add them, well before the plaintiff filed the present motion to amend. The alleged events are not a surprise. Nor does the Court find that there is any evidence of the plaintiffs' bad faith in delaying seeking the amendment.

Finally, the Court has reviewed each of the three cases that the defendants rely on in opposing the plaintiffs' motion to amend, and finds that they all are unavailing. First, each of the three cases approves a district court's denial of leave to amend, but none states that such an outcome was required under the circumstances. *See John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp.,* 22 F.3d 458, 462 (2d Cir.1994); *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990); *Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 87–88 (2d Cir.1998). Moreover, in each of those cases, the moving party sought to amend late in the litigation to assert a new cause of action. *Id.* In at least one case, the court also found that the proposed amendment was futile. *John Hancock Mut. Life Ins.,* 22 F.3d at 462. Here, the plaintiff seeks only to allege additional facts in support of his *original* causes of action, and the defendants have not asserted that the amendment is futile. Again, of significance in a motion to amend, there is no prejudice to the defendants. Under the circumstances, the Court finds that granting leave to amend is reasonable, and totally permissible.

## III.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' motion to amend is granted in all respects; and it is further

**ORDERED** that the parties are directed to contact the chambers of United States Magistrate Judge Wall chambers to schedule a conference to discuss additional discovery, if any, necessitated by the amendment.

**SO ORDERED.**