08-1839-cv
Mullins v. City of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

August Term, 2010

(Argued: September 22, 2010                    Decided:    November 16, 2010 )

Docket No. 08-1839-cv

———————————————

EDWARD D. MULLINS, et al.,

*Plaintiff-Appellees*,

v.

CITY OF NEW YORK and
THE NEW YORK CITY POLICE DEPARTMENT,

*Defendant-Appellants*.

———————————————

Before: POOLER, KATZMANN, and HALL, *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Scheindlin, *J.*) entered on March 21, 2008, and amended on April 10, 2008, preliminarily enjoining the City of New York and the New York City Police Department from investigating and disciplining Plaintiff-Appellees based upon Plaintiff-Appellees' testimony or participation in this lawsuit. We conclude that hearsay testimony is admissible to support the issuance of a preliminary injunction, and the district court did not abuse its discretion in granting preliminary injunctive relief to Plaintiff-Appellees based in part on such evidence.

Affirmed.

———————————————

STEPHEN P. YOUNGER, (Clay J. Pierce and A. Leah Vickers, *on the brief*) Patterson Belknap Webb & Tyler LLP, New York, NY;

Gregory K. McGillivary, Woodley & McGillivary (*on the brief*), Washington, DC; Andrew Quinn, Quinn & Mellea, LLP (*on the brief*), White Plains, NY, *for Plaintiff-Appellees*.

KAREN M. GRIFFIN (*of counsel*), Andrez Carberry, Francis F. Caputo (*on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellants*.

*POOLER*, Circuit Judge:

New York City and the New York City Police Department appeal from an order of United States District Court for the Southern District of New York (Scheindlin, *J*.) entered on March 21, 2008, and amended on April 10, 2008, preliminarily enjoining them from investigating and disciplining Plaintiff-Appellees based upon Plaintiff-Appellees' testimony or participation in this lawsuit. We conclude that hearsay testimony is admissible to support the issuance of a preliminary injunction, and the district court did not abuse its discretion in granting preliminary injunctive relief to Plaintiff-Appellees based in part on such evidence.

## BACKGROUND

Plaintiff-Appellees are approximately 4300 current and former New York City police sergeants who filed suit against the City of New York (the "City") and the New York City Police Department ("NYPD") on April 19, 2004, claiming systematic violations of their overtime rights under the Fair Labor Standards Act of 1938 ("FLSA"). Because of the sheer volume of plaintiffs, the parties agreed in May of 2005 to limit depositions to "test plaintiffs"—individuals from seventeen job categories, who would be organized into three groups.

The record reflects that, at some point in January 2006, NYPD's outside counsel, Seyfarth Shaw LLP, met with Charles Campisi, Chief of the "Internal Affairs Bureau" ("IAB"), as well as

2

other high level IAB officials and NYPD lawyers regarding the "topic of deposition testimony." On January 19, 2006, Seyfarth Shaw sent transcripts from depositions of the first group of test plaintiffs to Appellants. The next day, the NYPD ordered lieutenants from IAB to collect command logs, memo books, activity reports, overtime slips, and requests for leave reports from all of the test plaintiffs as well as individuals who worked with them. Some of the IAB document collectors were plaintiffs in this lawsuit—they were promoted to lieutenants after the action was filed. The pool of plaintiffs from whom documents were collected included both those who had been deposed and those who had not.

Counsel for the test plaintiffs immediately objected to the use of IAB to collect documents on the ground that certain plaintiffs understood IAB's involvement to mean they were under investigation. Sergeant Paul Capotosto, Citywide Secretary of the Sergeants Benevolent Association, described the document collection process as a "raid." During his testimony at the preliminary injunction hearing, Sergeant Capotosto chronicled at least a dozen phone calls he received from worried plaintiffs, who expressed concern to him that the NYPD was retaliating against them for their participation in the lawsuit. Among these callers was IAB Lieutenant Ed Heim, a plaintiff in this action, who described being "forced" to collect documents from other plaintiffs and communicated his apprehension to Sergeant Capotosto about the NYPD's approach. Another sergeant referred to IAB's actions as "goon tactics."

Testimony at the preliminary injunction hearing about the unusual nature of the process used to collect documents confirmed that plaintiffs' concerns were not unfounded. Sergeant Anthony Lisi of the Emergency Services Unit of the NYPD testified that document collection is typically conducted by Administrative Lieutenants or Integrity Control Officers assigned to a

3

particular command.  In addition, Sergeant Brian Coughlan, Sergeant Supervisor of Detectives in the Bomb Squad, testified that IAB is involved in most cases only when an officer is being arrested or removed from his post.

In March 2006, shortly after the document collection, IAB sent an Integrity Control Officer to attend the deposition of Sergeant Edward Scott.  As of his deposition date, Sergeant Scott, who was a plaintiff in the lawsuit against the City and NYPD, had given no testimony in connection with the action.  Sergeant Scott, who testified by affidavit at the preliminary injunction hearing, explained that Integrity Control Officers do not normally attend depositions, and he was, therefore, "surprised and concerned" by the officer's presence.  He also testified that he found the officer's presence to be "intimidating."  When Sergeant Scott's retirement was administratively deferred pending resolution of an unspecified "disciplinary matter" some months later, it came to light that he was under investigation for testimony he had given during his deposition.  Sergeant Scott stated that, at the time, "I believed that if I withdrew from this FLSA lawsuit, the City would close its investigation into my deposition testimony."

When discovery concluded with respect to the first group of test plaintiffs, these plaintiffs moved for summary judgment on their claims.  On November 6, 2007, the district court granted partial judgment in favor of the City and NYPD.  *See Mullins v. City of New York*, 523 F. Supp. 2d 339 (S.D.N.Y. 2007).  Specifically, the district court held that under Department of Labor rules in effect before August 23, 2004, certain sergeants were "bona fide executives" under FLSA, and were therefore exempt from overtime.  *Id.* at 359.  The court also identified material questions of fact concerning whether certain sergeants were exempt from overtime after the August 2004 change in Department of Labor regulations, and ordered a trial to resolve this

4

question. *Id.* at 360-61.

Three months later, in February 2008, the NYPD ordered Sergeant Anthony Cioffi, a member of the first group of test plaintiffs, to submit to a "GO-15" interview at the office of Charles Campisi, Chief of IAB. A GO-15 is an interview in connection with allegations of serious misconduct or corruption. As a preamble to the GO-15, an IAB lieutenant identified the "official Department investigation" as "Criminal Case Number 06975," and noted that the "complainant" was "the law firm of Seyfarth Shaw LLP." Sergeant Cioffi was informed that the interview was part of an investigation into his alleged violations of NYPD regulations relating to testimony given during his deposition; there were two charges—perjury and false statements. Sergeant Capotosto, who attended Sergeant Cioffi's GO-15 in his capacity as a representative of the Sergeants Benevolent Association, testified that Chief Campisi himself was at the interview when he arrived. Sergeant Capotosto also testified that it was unusual for a GO-15 to take place at Chief Campisi's office; in fact, in the hundreds of GO-15s with which he had been involved, Sergeant Capotosto could not recall a single interview that took place at the Chief's office.

At the beginning of the GO-15, Sergeant Cioffi was informed that his failure to answer the department's questions would "subject [him] to department charges, which would result in [his] dismissal from the Police Department." During the course of the GO-15, which was purported to be limited to "questions specifically directed and narrowly related to the performance of [Cioffi's] duties," Sergeant Cioffi was questioned for four hours about specific responses he gave at his deposition and was asked to account for certain inconsistencies in his testimony. Many of the questions were phrased as accusations of wrongdoing. For example, he was asked, "Sergeant, one area I want to know is I feel in your testimony for a fact you minimize your supervisory

5

responsibilities. Can you explain to me why you would do that?" Sergeant Cioffi explained that any differences between his November 15, 2005 testimony and his February 12, 2008 responses at the GO-15 interview could be attributed to the "duress" he felt during his November 2005 deposition, which he attributed to opposing counsel's "abrasiveness." The district court would later aptly observe that "[t]he transcript of the interrogation reveal[ed] lieutenants seeking concessions and modifications of testimony, rather than an investigation of a willful assertion of a material fact known to be false." *Mullins v. City of New York*, 634 F. Supp. 2d 373, 389 (S.D.N.Y. 2009).

The day after the GO-15, Appellees submitted a letter to the district court requesting an order temporarily restraining the NYPD from "retaliating against plaintiffs due to their testimony in the . . . action and attempting to coerce plaintiffs to alter their sworn deposition testimony." The district court held a hearing on February 21, 2008, and issued a temporary restraining order ("TRO") on March 6, 2008. The TRO enjoined Appellants from "(1) engaging in any further investigation of Sergeant Anthony Cioffi relating to his testimony or participation in this matter; (2) pursuing any disciplinary proceedings against plaintiff Cioffi based on his February 12, 2008, interrogation; and (3) investigating or disciplining any plaintiff in this matter based on his or her testimony or participation in this lawsuit."

Within days after the TRO issued, Plaintiff-Appellees learned of the pendency of the investigation of Sergeant Scott. They notified the district court immediately. On March 20, 2008, the district court extended the TRO for an additional ten days, and on March 21, the district court converted the TRO into a preliminary injunction. *See Mullins v. City of New York*, 554 F. Supp. 2d 483, 484, 494 (S.D.N.Y. 2008).

6

The City and the NYPD appealed the district court's grant of injunctive relief, and by summary order dated January 27, 2009, we remanded to the district court for additional fact finding and analysis. Pursuant to that remand, the district court held a two-day hearing in April 2009.

During the hearing, the district court accepted hearsay statements from sergeant representatives of the Sergeants Benevolent Association, many of which are chronicled above. Those representatives testified largely about the impact of IAB's actions on plaintiffs. Their testimony details calls and emails from plaintiffs expressing general concern that the NYPD was going to retaliate against them for participating in this lawsuit. Some of the representatives' testimony also described discussions with plaintiffs who were reticent to submit to depositions in light of the investigations of Sergeants Cioffi and Scott. Sergeant Scott himself recalled that five sergeants had specifically told him that they were considering dropping out of the lawsuit after observing the NYPD's actions with respect to him. Sergeant Brian Coughlan testified that he would be concerned if the injunction were removed, and that before the injunction issued, "there was talk . . . that guys were going to back out" of the lawsuit.

On June 9, 2009, the district court issued an opinion and order upholding the award of injunctive relief. *See Mullins v. City of New York*, 634 F. Supp. 2d 373 (S.D.N.Y. 2009).

For the reasons set forth below, we affirm.

## DISCUSSION

### I. Standard of Review

We review the grant of injunctive relief for abuse of discretion. *SEC v. Dorozhko*, 574 F.3d 42, 45 (2d Cir. 2009). A district court abuses its discretion "when (1) its decision rests on an

7

error of law . . . or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 209 (2d Cir. 2009) (internal quotation marks and citation omitted). Appellants argue that the district court abused its discretion in granting an award of preliminary injunctive relief because some of its findings of fact are clearly erroneous. Appellants contend that these findings are unsupported by sufficient evidence because they are based on hearsay testimony. We disagree.

The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Consonant with this view, six of our sister circuits have permitted district courts to rely on hearsay evidence for the limited purpose of determining whether to award a preliminary injunction. *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) ("It is well established that a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." (internal quotation marks and citation omitted)); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170-71 (7th Cir. 1997); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction . . . ."); *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (Courts at preliminary injunction stage "may rely on otherwise inadmissible evidence, including hearsay evidence." (citation omitted)); *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986); *Flynt Distrib. Co. v. Harvey*, 734

8

F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction . . . makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may even give inadmissible evidence some weight . . . ."); *see also Republic of the Phillipines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc).

Additionally, although it is a question of first impression in this Circuit, the lower courts routinely consider hearsay evidence in determining whether to grant preliminary injunctive relief. *See, e.g.*, *United States v. Buddhu*, No. 08 Civ. 0074, 2008 WL 2355930, at *1 n.2 (D. Conn. June 5, 2008) ("In considering a motion for a preliminary inunction, the Court may rely on affidavits, depositions, and sworn testimony, even when they include hearsay." (citations omitted)); *López Torres v. New York State Bd. of Elections*, 411 F. Supp. 2d 212, 226 n.17 (E.D.N.Y. Jan. 27, 2006) ("Plaintiffs finally raised the argument that the hearsay rule does not apply during a hearing on a motion for preliminary injunction. The issue was briefed and I ruled in their favor." (citations omitted)); *Zeneca Inc. v. Eli Lilly & Co.*, No. 99 Civ. 1452, 1999 WL 509471, at *2 (S.D.N.Y. July 19, 1999); *Fisher v. Goord*, 981 F. Supp. 140, 173 n.38 (W.D.N.Y. 1997) (citing cases); *SEC v. Musella*, 578 F. Supp. 425, 427-28 (S.D.N.Y. 1984) (noting that a court need not discount hearsay evidence presented in an application for a preliminary injunction if such evidence is found to be "inherently trustworthy").

We agree with these courts and conclude that hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction. The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage. To hold otherwise would be at odds with the summary nature of the remedy and would undermine the ability of courts to provide timely provisional relief. Accordingly, we

9

conclude that the district court committed no error in considering, and relying on, hearsay testimony from the sergeants.

## II.     The Standard for Injunctive Relief

Generally, a party seeking a preliminary injunction must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010). However, when a party seeks an injunction that will affect governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the plaintiff must typically show a likelihood of success on the merits—a serious question going to the merits is usually insufficient, even if the balance of hardships tips decidedly in the applicant's favor. *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 (2d Cir. 2010); *accord NAACP v. East Haven*, 70 F.3d 219, 223 (2d Cir. 1995) (applying likelihood test where plaintiff attempted to enjoin hiring of police officers and firefighters). In this case, we need not decide whether the higher standard applies, or whether, as Appellees urge, this case ought to be classified as an exception to the general rule, because we find that Appellees have demonstrated a likelihood of success on the merits.

### A.     Likelihood of Success on the Merits

FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [FLSA]." 29 U.S.C. § 215(a)(3). FLSA retaliation

claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988). Thus, a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). An employment action disadvantages an employee if "it well might have 'dissuaded a reasonable worker from making or supporting [similar] charge[s] . . . .'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Although the application of pre-existing disciplinary policies to a plaintiff "without more, does not constitute adverse employment action," *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), a causal connection between an adverse action and a plaintiff's protected activity may be established "through evidence of retaliatory animus directed against a plaintiff by the defendant," *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotation marks and citation omitted), or "by showing that the protected activity was closely followed in time by the adverse action," *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (citation omitted).

Once the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted). If the defendant meets this burden, the plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that

11

more likely than not discrimination was the real reason for the employment action." *Id.* (internal quotation marks, citation and alterations omitted).

In this case, no party disputes that the filing of a FLSA lawsuit for overtime is a "protected activity." There is likewise little doubt the evidence considered by the district court was sufficient to support the court's finding that the NYPD's actions in response to receipt of transcripts of deposition testimony disadvantaged Appellees. An IAB investigation, like that to which Sergeant Cioffi was subjected, carries with it a possibility of termination, *see* Patrol Guide § 206-13; indeed, Sergeant Cioffi was advised at the outset of the GO-15 that he would be fired if he did not answer IAB's questions. In addition, the NYPD indefinitely postponed Officer Scott's retirement pending resolution of the inquiry into his deposition testimony. Further, all IAB allegations appear as part of the ordinary course in an officer's Central Personnel Index—regardless of whether the officer is later exonerated. These notations affect an officer's level of discipline for future infractions and can complicate an officer's request for transfers or promotions.

Regarding the causal connection between the NYPD's actions and Appellees' participation in this lawsuit, we think the link is self-evident, and the district court did not err in concluding as much—IAB investigated the veracity of testimony given by the sergeants as part of the lawsuit. Moreover, the sequence, timing and nature of events only reenforces the connection. The day after the NYPD received transcripts from the depositions of certain test plaintiffs, IAB was dispatched to collect documents from the first group of plaintiffs. As testimony indicated, this was unusual in and of itself, because such documents are typically collected by Administrative Lieutenants or other officers in the individual precincts—not IAB.

12

About seven weeks after the document collection, Sergeant Scott was scheduled to be deposed. Though he had given no testimony in connection with the lawsuit up to that point, an IAB officer appeared to observe his deposition. When Sergeant Scott was set to retire some months later, he was informed that his retirement was being held up by a pending "disciplinary matter," which turned out to be an investigation into his deposition testimony. Then, three months after the district court issued its summary judgment order, the NYPD ordered Sergeant Cioffi to submit to a GO-15 interview regarding his deposition testimony. Testimony at the preliminary injunction hearing revealed that even if it had not been unusual for the NYPD to investigate an employee based upon deposition testimony in connection with a pending lawsuit, this GO-15 interview was unusual because it took place at the office of the Chief of IAB.

Appellants have attempted to rebut Appellees' prima facie case by arguing that allegations of perjury by members of the NYPD are time-sensitive and significant enough to warrant immediate investigations, even if the investigations must be conducted during the pendency of an action. We cannot conclude that the district erred in rejecting this argument. In the first instance, Appellants collected documents from *all* of the test plaintiffs, and even individuals who worked with them—not just those plaintiffs they suspected of perjury. Further, the NYPD sent an IAB officer to Sergeant Scott's deposition *before* there was any basis on which to conclude he had given false testimony, since up to that point, he had provided no testimony at all. Were these events alone insufficient to support an award of preliminary injunctive relief, the underlying timeline seriously undermines Appellants' insistence on the time-sensitive nature of their investigations. The NYPD received copies of the sergeants' deposition transcripts in January 2006. Yet the NYPD appears to have done nothing for almost a year. Then, although they

13

apparently concluded in December 2006 that Sergeant Cioffi had given false testimony at his deposition, the NYPD waited until February 2008 to order him to appear for a GO-15. Nothing about this timeline speaks of urgency.

### B. Irreparable Harm

"Unchecked retaliation subverts the purpose of the FLSA" and "the resulting weakened enforcement of federal law can *itself* be irreparable harm in the context of a preliminary injunction application"; however, a plaintiff "must show some evidence of actual chill that would be cured by the requested injunction." *Hui Lin v. Great Rose Fashion, Inc.*, No. 08 Civ. 4778, 2009 WL 1544749, at \*21 (E.D.N.Y. June 3, 2009) (internal quotation marks omitted) (citing inter alia, *Bennett v. Lucier*, 239 F. App'x 639, 640 (2d Cir. July 5, 2007). Thus, we have held that "[a] retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights . . . or from providing testimony for the plaintiff in [his] effort to protect [his] own rights. These risks may be found to constitute irreparable injury." *Holt v. Continental Group, Inc.*, 708 F.2d 87, 91 (2d Cir. 1983).

Sergeant Lisi testified that he was concerned about IAB, and that he expressed these concerns to his union, which told him that it was doing everything possible to protect the plaintiffs. He testified that he would "absolutely" have "concerns" if the injunction were lifted, and that he feared retribution from IAB. From this and other testimony, which was not rebutted, the district court concluded that "the evidence presented clearly shows that absent injunctive relief numerous plaintiffs would likely (and reasonably) withdraw from this litigation rather than testify and face a line-by-line IAB interrogation." *Mullins v. City of New York*, 634 F. Supp. 2d 373, 391 (S.D.N.Y. 2009). There was no error in this conclusion. The standard for preliminary

14

injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already have occurred. We have held that the "risk" of deterrence is sufficient to satisfy the irreparable harm standard. *See Holt*, 708 F.2d at 91.

Moreover, it is clear that the preliminary injunction has minimized the harm to Appellees and continues to be necessary to protect the sergeants so long as the legal proceedings are ongoing. Appellees submitted evidence to the district court that numerous plaintiffs were "extremely concerned" about testifying just before the commencement of the trial relating to the first group of test plaintiffs. Only after plaintiffs' attorneys explained that the preliminary injunction protected plaintiffs from retaliatory investigations did those sergeants decide to continue with the lawsuit. Thus, as the district court concluded, "the March 21 Injunction countered the witness intimidation that resulted from the pattern of IAB investigations," and the evidence plainly showed "that numerous plaintiffs would likely abandon this suit rather than testify" in the event that the district court "were to lift the preliminary injunction." *Mullins*, 634 F. Supp. 2d at 393.

Because we find that the district court did not abuse its discretion in finding either that Appellees are likely to succeed on the merits of their FLSA retaliation claim, or that Appellees have established that irreparable harm is likely to flow from the putative FLSA violation absent injunctive relief, we need not reach the merits of Appellees' claim that Appellants' conduct also violated the First Amendment of the United States Constitution. "[P]rinciples of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case." *Higazy v. Templeton*, 505 F.3d 161, 179 n.19 (2d Cir. 2007) (citing cases). We have considered Appellants' remaining arguments and conclude that they are without merit.

15

## CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court.