**Salomon SALAZAR, Plaintiff,**

v.

**BOWNE REALTY ASSOCIATES, L.L.C. and Ronald J. Swartz, Defendants.**

**No. 10–CV–2339 (ADS)(ETB).**

United States District Court,
E.D. New York.

July 7, 2011.

Borrelli & Associates, P.C. by Michael J. Borrelli, Esq., Alexander T. Coleman, Esq., of Counsel, Carle Place, NY, for Plaintiff.

Cole Schotz Meisel Forman & Leonard PA by Jed Matthew Weiss, Esq., of Counsel, New York, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On May 24, 2010, the plaintiff Salomon Salazar ("Salazar" or "the Plaintiff") commenced this action against his former employers defendants Bowne Realty Associates, LLC ("Bowne") and Ronald J. Swartz ("Swartz" and together with Bowne "the Defendants") alleging that the Defendants failed to pay him his full wage, or in the alternative overtime compensation, and engaged in retaliatory behavior, all in violation the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law, N.Y. Lab. Law § 190, *et seq.* ("New York Labor Law"). Presently before the Court are two motions. The first is the Defendants' motion pursuant to Federal Rule of Civil Procedure ("Fed R. Civ. P.") 12(b)(6) to dismiss any claim for damages by the Plaintiff that are time-barred under the FLSA, or that the Defendants already paid to the Plaintiff pursuant to a related arbitration decision. Second, is a motion by the Plaintiff pursuant to Fed.R.Civ.P. 15(a) to amend the complaint to include additional retaliation claims under the FLSA and the New York Labor Law based on the Defendants' conduct after the filing of the complaint. For the reasons set forth below, the Court grants both motions.

## I. BACKGROUND

The following facts are drawn from the complaint, the proposed amended complaint, and the motion papers, and are construed in the light most favorable to the Plaintiff.

Defendant Ronald L. Swartz, through his company, defendant Bowne Realty Associates, LLC, owns and manages residential apartment buildings located in New York. From approximately 2001 until August 2005, plaintiff Salomon Salazar was employed by Bowne in an untitled position that Salazar refers to as a "Construction Worker". In his capacity as a Construction Worker, Salazar worked Monday through Friday, 8:00 am to 4:00 pm, and was responsible for responding to and servicing maintenance requests and performing construction jobs at various Browne buildings—*e.g.*, rebuilding bathrooms and kitchens and remodeling apartments. Salazar's compensation for his work as a Construction Worker was $325 per week and he was not subject to a union agreement.

In or about August 2005, Salazar either received a promotion, or was given the secondary job of a "Superintendant" at the Bowne building located at 143–05 41st Avenue, Flushing, New York 11355 ("the Flushing building"). Consistent with Bowne policy, Salazar was the only Superintendent at the Flushing building. In his capacity as Superintendent of the Flushing building, Salazar was responsible for responding to minor maintenance and service requests at the Flushing building—*e.g.*, fixing plumbing problems and changing electrical plugs and door knobs—and was required to be "on call" to respond to these requests. According to Salazar, he continued to work his regular hours as a Construction Worker, and performed his Superintendent duties at the Flushing building in the late afternoons, evenings, and weekends.

In contrast to the non-union position of Construction Worker, Salazar's job as a Superintendant at Bowne was governed by a collective bargaining agreement ("CBA") between United Service Employees Union, Local 377, RWDSU, UFCW ("the Union") and Bowne. The complaint identifies the following provisions of the CBA as relevant to Salazar's claims:

- [E]ach superintendant's workday "shall not be in excess of eight (8) hours," and that a "Superintendant shall be available for emergencies before or after the commencement or termination of the work day except on his days off." (Compl., ¶ 21.)
- [E]ach Superintendant shall be paid at a rate set forth in a specific schedule, with such scheduling setting that weekly rate of pay at $770, $785, and $785 for the years 2005, 2006, and 2007 respectively. (Compl., ¶ 22.)
- [T]he position of Superintendant is entitled to overtime wages. (Compl., ¶ 23.)

However, despite being classified as a Superintendant from August 2005 until July 2007, the Defendants allegedly continued to compensate Salazar at the Construction Worker rate of $325 per week. According to Salazar, after he made repeated complaints to the Defendants, they increased his salary beginning in July 2007 to the rate of pay he was entitled to as a Superintendant under the CBA. Also in July 2007, the Union filed a grievance on Salazar's behalf against Bowne alleging that Salazar was entitled to unpaid wages for his work as a Superintendant from August 15, 2005 until July 16, 2007. As required by the CBA, the grievance was submitted to arbitration (the "Superintendant Arbitration"). On November 16, 2009, the arbitrator issued an award to Salazar, and directed Bowne to pay Salazar for the time period of August 15, 2005 to July 16, 2007 for his Superintendant duties, which was the difference between the rate of pay he was entitled to under the CBA and the Construction Worker rate of $325 per week. Bowne complied with the arbitra-

tor's order and compensated Salazar for his work as a Superintendant from August 15, 2005 until July 16, 2007.

However, after the Union filed the grievance on his behalf, and after he informed the Defendants on October 8, 2007 of his intention to assert his rights under the CBA, according to Salazar, the Defendants took certain retaliatory actions including: (1) denying Salazar reasonable vacation requests; (2) charging Salazar for parking that was free for other Superintendants and deducting from the arbitrator's award $4,320 for Salazar's parking at the Flushing building from August 15, 2005 through July 16, 2007; and (3) ultimately, prohibiting Salazar from parking at the Flushing building.

On May 24, 2010, Salazar filed a complaint in this action ("the Initial Complaint") alleging that the Defendants had violated the FLSA and the New York Labor Law. The first cause of action in the Initial Complaint is for either unpaid wages or overtime compensation for the time period beginning in August 2005. The reason for the alternative pleading is that, according to Salazar, since August 2005, despite the fact that he has continued to work as a full-time Construction Worker, the Defendants have only compensated him for his work as a full-time Superintendant. Therefore, whether the Plaintiff is seeking unpaid wages or overtime compensation depends on how the Court characterizes Salazar's employment. In particular, if, as Salazar contends, beginning in August 2005 the Defendants employed Salazar in two separate capacities—a Construction Worker *and* a Superintendant—than Salazar alleges that he is entitled to unpaid wages for his work as a Construction Worker. However, if Salazar was only employed in one capacity, either as a Construction Worker or a Superintendant, than Salazar claims that he is enti-

tled to overtime compensation for all hours worked more than 40 hours in a week. Finally, regardless of how his employment is classified, Salazar contends that the Defendants willfully failed to pay him in accordance with the FLSA and the New York Labor Law and therefore he is entitled to liquidated damages. The second cause of action in the Initial Complaint asserts that the Defendants violated the FLSA and the New York Labor Law by retaliating against Salazar for asserting his rights under the CBA.

On August 31, 2010, the Defendants filed a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) seeking the dismissal of any time-barred FLSA claims. In addition the Defendants seek the dismissal of Salazar's claim for unpaid wages for his work as a Superintendent from August 15, 2005 through July 16, 2007, which wages they have already paid Salazar as a result of the decision in the Superintendent Arbitration.

The story does not end here. After the Plaintiff filed the Initial Complaint, at an unspecified time, the Defendants commenced an action against the Plaintiff in the Civil Court of the City of New York to recover $4,320 that the Plaintiff allegedly owed for parking at the Flushing building (the "Parking Litigation"). After a bench trial, on November 4, 2010, the Honorable Maureen A. Healy entered judgment in favor of Salazar and dismissed the Defendants' claim. Subsequently, on January 7, 2011, the Defendants terminated Salazar's employment and on February 7, 2011, evicted him from his apartment. Although the Defendants contend that they terminated Salazar after learning that in 2007, Salazar failed to report an injury at the Flushing building, Salazar alleges that there was no justifiable ground for his termination.

As a result, on March 3, 2011, the Plaintiff moved pursuant to Fed.R.Civ.P. 15(a) to amend the complaint to add claims asserting that the Defendants conduct in commencing the allegedly frivolous Parking Litigation, as well as terminating and evicting Salazar were in retaliation for his filing of the Initial Complaint in violation of the FLSA and the New York Labor Law.

The decision below addresses both the Defendants' motion to dismiss and the Plaintiff's motion to amend.

## II. DISCUSSION

### A. As to the Defendants' Motion to Dismiss

The motion to dismiss is easily resolved in that the parties agree to what, in essence, is a clarification of the scope of the Plaintiff's causes of action. Based on the language in the Initial Complaint suggesting that the Plaintiff was seeking damages for conduct occurring as far back as August of 2005, the Defendants moved to dismiss any claim for damages outside of the FLSA statute of limitations period as time-barred. According to the Defendants, the applicable FLSA statute of limitations is two years, which would necessitate the dismissal of any claim for conduct occurring prior to May 24, 2008. For his part, the Plaintiff does not oppose the dismissal of time-barred FLSA claims, but contends that the applicable statute of limitations is three years because he has pled that the Defendants willfully violated the statute. Although in reply the Defendants state that they do not "agree" that the Plaintiff has adequately pled that they "willfully" violated the FLSA, they do not explicitly contest the Plaintiff's contention.

In addition, the Defendants moved to dismiss the Plaintiff's claim for unpaid compensation for his work as a Superintendant from August 15, 2005 through July 16, 2007 as barred by a theory of double recovery. Again, the Plaintiff does not oppose the Defendants' motion directly, but clarifies that the only damages he seeks with respect to his Superintendant duties between August 15, 2005 and July 16, 2007 are liquidated damages. In reply, the Defendants do not address whether the Plaintiff is entitled to claim liquidated damages for his work as a Superintendant in addition to what was awarded in the Superintendant Arbitration. Rather, the Defendant reiterates that, at this point in the litigation, they are only seeking a ruling that the Plaintiff cannot recover for compensation that was already paid pursuant to the arbitration award for his work as a Superintendant.

The Plaintiff has conceded that his claims for unpaid wages or overtime wages that occurred outside of the ultimately applicable FLSA statute of limitations are time-barred, and that he is not seeking unpaid or overtime wages for his work as a Superintendant between August 15, 2005 and July 16, 2007. Moreover, the Defendants are not currently challenging whether the applicable FLSA statute of limitations is two or three years, nor are they addressing whether the Plaintiff can recover liquidated damages for his work as a Superintendant between August 15, 2005 and July 16, 2007. Thus, there is no dispute between the parties that requires resolution at this point in the litigation and the Court grants the Defendants' motion to dismiss the Plaintiff's FLSA claims for conduct occurring prior to May 24, 2007, and the Plaintiff's claim for unpaid compensation for his Superintendant duties from August 15, 2005 until July 16, 2007.

### B. As to the Plaintiff's Motion to Amend

The Plaintiff moves to amend his complaint pursuant to Rule 15(a) to include

allegations of retaliation by the Defendants that occurred subsequent to the filing of the Initial Complaint. In particular, the Plaintiff alleges that as a result of his filing the instant action the Defendants: (1) commenced the allegedly frivolous Parking Litigation against him; (2) terminated his employment without cause; and (3) evicted him from his apartment.

As an initial matter, because he seeks to add claims based on events that occurred after the filing of the complaint, the Plaintiff's motion is more properly classified as a supplemental pleading under Fed. R.Civ.P. 15(d) ("Rule 15(d)"). Rule 15(d) states in relevant part that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed.R.Civ.P. 15(d). Where, as here, the Plaintiff seeks to add related claims against the same defendants, the analysis under Rule 15(a) and Rule 15(d) is the same. *See M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F.Supp.2d 205, 222 (E.D.N.Y.2010) ("The same standard, however, applies to both motions to amend and motions to supplement."). A court should deny leave to amend or to serve a supplemental pleading only upon "undue delay, bad faith or dilatory motive on the part of the [moving party], ... undue prejudice to the [non-moving party,] ... [or] futility." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603–04 (2d Cir.2005) (applying the *Foman* standard to a motion to amend pursuant to Rule 15(a)); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995) (applying the *Foman* standard to a motion to serve a supplemental pleading pursuant to Rule 15(d)). Ultimately it is "within the sound discretion of the court whether to grant leave to amend." *John Hancock*

*Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994).

The Defendants do not argue that the Plaintiff made this motion after undue delay or in bad faith, nor do the Defendants contend that they would be prejudiced in anyway by the allowance of the amendments. Rather, the Defendants oppose the motion for leave to amend on the sole ground that the proposed amendment is futile. Accordingly, the Court limits its analysis to whether the proposed amendments are futile.

■ A proposed amendment is futile if the proposed claim could not withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.2002). Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993).

The Plaintiff seeks to amend the complaint to add causes of action for retaliation pursuant to FLSA and the New York Labor Law. The FLSA's anti-retaliation provision protects employees who have "filed any complaint or instituted or caused to be instituted any proceeding under or

related to this chapter, or has testified or is about to testify in any such proceeding ..." 29 U.S.C. § 215(a)(3). Similarly, section 215 of the New York Labor Law states in relevant part that an employer shall not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee ... (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter ..." N.Y. Lab. Law § 215(a)(iii).

■ The standards for stating a claim for retaliation under the FLSA and the New York Labor Law significantly overlap, and have both been held to require that, to state a claim, a plaintiff must plead facts showing a prima facie case of retaliation, namely: (1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. See Mullins v. City of New York, 626 F.3d 47 (2d Cir. 2010) (FLSA); Higueros v. New York State Catholic Health Plan, Inc., 526 F.Supp.2d 342, 347 (E.D.N.Y.2007) (Spatt, J.) (New York New York Labor Law).

The Defendants' primarily oppose the Plaintiff's proposed amendments on the grounds of futility because: (1) the Defendants claim they had a legitimate reason for terminating the Plaintiff, namely that they recently learned that he failed to report an injury at the Flushing building in September 2007 and (2) the statutes only protect the filing of the Initial Complaint, and the eight month gap between the filing of the Initial Complaint and the Plaintiff's termination is too long to prove a causal connection.

■ As to the first element of the prima facie case—participation in a protected activity—it is undisputed that the Plaintiff's filing of the Initial Complaint alleging FLSA and New York Labor Law violations constituted a "protected activity" under both statutes. See Mullins v. City of New York, 626 F.3d 47 (2d Cir.2010) (stating that a protected activity for purposes of an FLSA claim includes "the filing of a FLSA lawsuit"). Although the parties disagree as to whether the Plaintiff's continued participation in the lawsuit also constitutes a protected activity, because the Court ultimately determines that the Plaintiff has plausibly stated a claim for retaliation based on the filing of the Initial Complaint, the Court does not need to resolve this dispute on the instant motion.

With regard to the second element of the prima facie case, the Plaintiff has alleged that he was terminated without cause, which constitutes an "adverse employment action". See Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000) (defining adverse employment action to include "termination of employment"). While, the Defendants dispute the Plaintiff's characterization of his termination as being without cause, on a motion to amend, the Court is required to accept the Plaintiff's facts as true. Thus the Court finds that the Plaintiff has plausibly alleged that his termination constituted an adverse employment action.

■ The third and final element of a prima facie case requires the Plaintiff to show a causal connection between the protected activity and the adverse employment action. "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" Gorman–Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir.2001) (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir.1996)). Here,

there was approximately an eight month lapse between the filing of the Initial Complaint on May 24, 2010, and the Defendants termination of the Plaintiff on January 7, 2011. Although the Defendants contend that an eight month gap is too long for the Court to infer a causal connection, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a [protected activity] and an allegedly retaliatory action." *Id.* Rather, it is up to a court "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases". *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009); *cf. Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 446–47 (2d Cir.1999) (acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45–46 (2d Cir.1980) (eight month gap between EEOC complaint and retaliatory act suggested causal relationship).

Moreover, "the element of causal connection need 'not [be] based only—or even primarily—on temporal proximity' but may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent." *Pakter v. New York City Dept. of Educ.,* No. 08–CV–7673, 2010 WL 1141128, at *8 (S.D.N.Y. Mar. 22, 2010) (citing *Patane v. Clark,* 508 F.3d 106, 116–17 (2d Cir.2007)). For example, in addition to the temporal proximity between a protected activity and the adverse employment action, a plaintiff can plausibly plead a causal connection by showing "other actions in that time frame that suggest[ ] a retaliatory motive by defendants". *Hemans v. Long Island Jewish Med. Ctr.,* No. 10–CV–1158, 2010 WL 4386692, at *10 (E.D.N.Y. Oct. 28, 2010). Here, in addition to his termination eight months after he filed the Initial Complaint, the Plaintiff alleges additional retaliatory conduct from which the Court can infer a causal connection. In particular, the Plaintiff contends that the Defendants commenced the allegedly frivolous Parking Litigation also in retaliation for his filing of the Initial Complaint.

While the Plaintiff will eventually have to meet the higher threshold for establishing a causal connection to prove a retaliation claim, because proposed amendments are construed liberally, these allegations are sufficient to plausibly allege a causal connection. *See Kriss v. Schenectady City School Dist.,* No. 08–CV–230, 2010 WL 3338949, at *12 (N.D.N.Y. Aug. 24, 2010) (granting a motion to amend to add a claim of retaliation despite the fact that the court "ha[d] some doubt as to Plaintiff's ability to demonstrate a casual connection between his filing of a complaint on July 6, 2005, and his termination more than one year later" because of the possibility that the plaintiff could show non-circumstantial evidence of retaliatory intent); *Manigaulte v. C.W. Post of Long Island Univ.,* 659 F.Supp.2d 367, 381 (E.D.N.Y.2009) ("Although the alleged causal connection between the protected activity and defendant's decision to not reappoint plaintiff to his position may be tenuous at best, it is at least plausible, thus rendering the proposed cause of action sufficiently pled for this motion."); *Ke v. 85 Fourth Ave. Inc.,* No. 07–CV–6897, 2009 WL 185949, at *2 (S.D.N.Y. Jan. 22, 2009) (noting that in civil rights cases, which have a similar standard for retaliation claims, "plaintiffs are routinely permitted to supplement their complaints by asserting a retaliation claim that only arose after the litigation had commenced and was not part of the original pleadings" (collecting cases)).

Viewing the facts in a light most favorable to the Plaintiff, the Court finds that he has plausibly alleged that the Defendants terminated his employment in retaliation for his filing of the Initial Complaint. Accordingly, because the proposed amendment plausibly states a claim for retaliation, it is not futile to grant the Plaintiff leave to amend in that regard.

## III. CONCLUSION

For the foregoing reasons it is hereby:

**ORDERED,** that the Defendants' motion to dismiss the Plaintiff's FLSA claims for conduct occurring prior to May 24, 2007 is granted, and it is further

**ORDERED,** that the Defendants' motion to dismiss any claims for unpaid wages for the Plaintiff's position as a Superintendant that were the subject of the Superintendant Arbitration is granted, and it is further

**ORDERED,** the Plaintiff's motion to amend the complaint to add claims for retaliation under the FLSA and the New York Labor Law based on the Defendants' allegedly retaliatory acts that occurred after the Plaintiff filed the Initial Complaint is granted. The Plaintiff is directed to serve the amended complaint within 20 days from the date of this decision and order.

**SO ORDERED.**